Matter of Nielson (2024 NY Slip Op 03755)

Matter of Nielson

2024 NY Slip Op 03755

Decided on July 10, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 10, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
HELEN VOUTSINAS, JJ.

2022-08178

[*1]In the Matter of Jason A. Nielson, an attorney and counselor-at-law. (Attorney Registration No. 4351391)

The respondent was admitted to the Bar in the State of New York at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on July 26, 2006. By order to show cause dated November 15, 2022, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed by an order of the Supreme Court of the State of Minnesota filed July 13, 2022.

Catherine A. Sheridan, Acting Chief Counsel, Brooklyn, NY, for Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts.

PER CURIAM.

OPINION & ORDER
By order filed July 13, 2022, the Supreme Court of the State of Minnesota suspended the respondent for a period of 30 days, followed by probation for a period of one year upon his reinstatement, finding that he failed to keep a client reasonably informed about the status of her matter, failed to explain a matter to the extent reasonably necessary to permit the clients to make informed decisions regarding the representation, failed to make efforts to ensure a non-lawyer's conduct was compatible with the respondent's professional obligations, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of rules 1.4(a)(3) and (b), 5.3(b), and 8.4(c) of the Minnesota Rules of Professional Conduct (hereinafter RPC).
The Minnesota Disciplinary Proceeding 
The respondent was admitted to the Minnesota Bar in 2013. At all times relevant to the misconduct, the respondent was an associate at the Igbanugo Partners Int'l Law Firm, PLLC (hereinafter the IP Firm), practicing almost exclusively immigration law. The respondent joined the IP Firm in 2012, and at the time of the Minnesota disciplinary proceeding, he was a partner at the IP Firm.
The underlying misconduct involved two client matters between 2013 and 2015. In September 2013, client MD consulted HI, a founding partner of the IP Firm, about retaining the firm to change her immigration status. MD was from Mexico and entered the United States in 1987 as an undocumented immigrant without legal status. MD has four daughters who are United States citizens. MD agreed to retain the IP Firm to file a Form I-130 (Petition for Alien Relative) and Form I-601A (Application for Provisional Unlawful Presence Waiver). The fee agreement initially was for the sum of $9,500, but later was reduced to the sum of $8,000 due to financial hardship.
MD's immigration matter was assigned to the respondent. During the respondent's representation, MD did not have a qualifying relative for the I-601A application. In December 2013, the respondent filed an I-130 petition with the United States Citizenship and Immigration Services (hereinafter the USCIS). The USCIS approved the I-130 petition on April 30, 2014. On June 5, [*2]2014, the respondent's paralegal sent an email to MD's adult daughter, informing her that the next step in the process would be to file an I-601A application using MD's minor children as qualifying relatives who would experience an extreme hardship if MD was not allowed to remain in the United States. The respondent was copied on this email and knew that the paralegal's statement was wrong since at that time, a child of a foreign national could not be a qualifying relative for purposes of an I-601A waiver. The respondent did not immediately contact MD to correct the misstatement. On September 2, 2014, MD met with the respondent to provide the requested information in support of her I-160A waiver. It was not until December 23, 2014, that MD learned that she could not gain legal status through her daughters.
In response to an inquiry by the National Visa Center (hereinafter the NVC), the respondent sent an email to the NVC on July 2, 2015, advising that MD wished to continue with her I-130 petition. The NVC informed the respondent that since a year had passed without activity, the forms and fees needed to be resubmitted to continue with the I-130 petition. The respondent did not relay this information to MD, who eventually hired a new law firm.
A second client, OC, retained the respondent to obtain legal status in the United States. OC was born in Mexico, entered the United States as an undocumented immigrant, and had previously retained other counsel to gain legal status without success. On August 27, 2013, OC agreed to pay the IP Firm the sum of $2,500 to file an I-130 petition. On November 12, 2013, the respondent filed a Form I-130 on behalf of OC with the USCIS, which approved the form on May 22, 2014. On June 3, 2014, OC and her adult daughter, MA, met with the respondent. A second contract for legal services was signed for the additional sum of $6,500 to file the I-601A application and for "consular processing." The following day, on June 4, 2014, the respondent emailed MA and incorrectly told her that she was the qualifying relative for the purposes of OC's I-601A application and that MA needed to prepare an affidavit stating that it would be an extreme hardship not to have her mother, OC, in the United States. On June 24, 2014, the respondent met with OC and MA to further discuss the I-601A application, and the respondent instructed OC to obtain additional supporting documents. On February 19, 2015, OC was informed during a meeting with the respondent that she did not have a qualifying relative for purposes of an application for an I-601A waiver, but that the IP Firm would help OC explore other options. On May 7, 2015, OC told the IP Firm that she had retained new counsel and asked for a refund of the fees that she had paid.
At a five-day disciplinary hearing before a referee, both MD and OC testified that they were led to believe that they could obtain permanent residency through their respective daughters. The respondent admitted that he knew that MD's and OC's daughters could not be qualifying relatives, but he contended that he was not intentionally dishonest. The referee sustained some but not all of the misconduct alleged in the petition of charges. The referee concluded that the vulnerability of the clients, the respondent's substantial experience in the practice of law and immigration law, and the respondent's lack of remorse were aggravating factors, and that no mitigating factors existed. Based on these findings, the referee recommended the sanction of public reprimand, to prohibit the respondent from taking on new clients for 45 days, and to place the respondent on probation for a period of one year.
By order filed July 13, 2022, the Supreme Court of the State of Minnesota confirmed the referee's findings. The referee found that by failing to explain the case to the clients so that they could make informed decisions, the respondent violated RPC rule 1.4(b). The respondent had argued before the Supreme Court of the State of Minnesota that this finding was erroneous because he did not meet with the clients in the initial consultations. The respondent further contended that he had informed both clients that he would be pursuing multiple avenues for them to achieve legal status in anticipation of a change in the law to include children as qualifying relatives. The respondent argued that the clients were not credible when they testified that they believed, upon retaining the IP Firm, that their daughters were qualifying relatives, despite the fact that the respondent and his paralegal specifically told MD and OC that their children could be qualifying relatives.
The referee also found that the respondent violated RPC rule 5.3(b) when he failed to ensure that his paralegal's conduct was compatible with the respondent's professional obligations when the paralegal made a false statement that MD's daughter was a qualifying relative and the respondent failed to correct the statement. The respondent contended that the referee erred in making this determination because the respondent and HI took corrective measures with the paralegal. The Supreme Court of the State of Minnesota rejected this argument because there was no evidence in the record to support an inference that the respondent corrected the false statement, [*3]and the referee found that the respondent's statements were not credible.
The referee further found that the respondent violated RPC rule 8.4(c) by, personally and through staff members, providing false and misleading information to clients, which constituted conduct involving dishonesty, fraud, deceit, or misrepresentation. The respondent contended that because the referee did not specifically state that the respondent was intentionally dishonest, this RPC violation should not stand. Again, the Supreme Court of the State of Minnesota did not find this argument persuasive.
Lastly, the referee found that by failing to notify MD that her I-130 petition would need to be resubmitted and additional fees paid, the respondent violated RPC rule 1.4(a)(3), which requires a lawyer to keep the client reasonably informed about the status of her matter. The respondent contended that his representation of MD ended in May 2015, and thus, the respondent was not obligated to follow up on the status of MD's I-130 petition. The respondent further contended that since he never submitted any forms or fees directly to NVC, he was not obligated to resubmit any forms or fees to NVC. The Supreme Court of the State of Minnesota rejected these arguments since as of July 2015, the respondent communicated with NVC on MD's behalf, indicating her wish to continue her I-130 petition. The respondent also acknowledged that after an I-130 petition was submitted and approved by USCIS, the case was transferred to NVC for processing.
The respondent also argued to the Supreme Court of the State of Minnesota that he did not receive a fair disciplinary hearing because, inter alia, the petition lacked specificity and clarity, and the delay in the filing of the petition caused the witnesses to forget specific events. The Supreme Court of the State of Minnesota found that the charges against the respondent were sufficiently clear and specific and that the record indicated he was given an opportunity to anticipate, prepare, and present a defense at the disciplinary hearing.
In imposing a 30-day suspension, the Supreme Court of the State of Minnesota noted that the respondent's clients were particularly vulnerable as undocumented immigrants with limited English language proficiency, and the respondent caused substantial harm to his clients. The respondent also caused financial harm to the clients, who paid a substantial amount of money for the representation. Furthermore, the respondent failed to acknowledge his wrongdoing and the severity of his misconduct. The Supreme Court of the State of Minnesota also rejected the respondent's contention that his lack of disciplinary history was a mitigating factor, finding that case law had repeatedly held that the lack of prior disciplinary history was not a mitigating factor, but constituted the absence of aggravating factor. Moreover, while extensive pro bono or civic work may constitute mitigation, the respondent's submission of some pro bono work without demonstrating its extensiveness was not considered.
By order dated September 12, 2022, the Supreme Court of the State of Minnesota reinstated the respondent to the practice of law in Minnesota and placed him on probation for a period of one year.
New York Proceeding 
By order to show cause dated November 15, 2022, this Court directed the respondent to show cause why discipline should not be imposed upon him pursuant to 22 NYCRR 1240.13, based on the misconduct underlying the discipline imposed by order of the Supreme Court of the State of Minnesota filed July 13, 2022, by filing an affidavit in accordance with 22 NYCRR 1240.13(b) with the Clerk of this Court, with proof of service upon the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts on or before December 29, 2022. Although the respondent was duly served with the order to show cause dated November 15, 2022, he has neither submitted a response thereto, nor requested additional time to do so. Therefore, the respondent waived his ability to assert any applicable defense under 22 NYCRR 1240.13(b) or otherwise put forth any mitigating evidence.
Findings and Conclusion 
Based on the misconduct underlying the discipline imposed by the order of the Supreme Court of the State of Minnesota filed July 13, 2022, we find that the imposition of reciprocal discipline is warranted, and conclude that the respondent should be suspended for a period of six months.
LASALLE, P.J., DILLON, DUFFY, BARROS and VOUTSINAS, JJ., concur.
ORDERED that the respondent, Jason A. Nielson, is suspended from the practice of [*4]law for a period of six months, commencing August 12, 2024, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than January 10, 2025. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), and (3) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jason A. Nielson, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Jason A. Nielson, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court